# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

RICARDO RIVERA-ORTIZ,   CASE NO. 13-633 (GAG)

Defendant.

## **OPINION AND ORDER**

On May 19, 2018, a jury convicted Defendant Ricardo Rivera-Ortiz for making false statements, embezzlement, and concealment to the Social Security Administration in violation of 18 U.S.C. § 1001, 18 U.S.C. § 641-42, and 42 U.S.C. § 408(a)(4). At sentencing, the Court ordered the parties to submit briefs regarding restitution, and continued the hearing. For the reasons discussed below, the Court orders the Government to revise its restitution amount to reflect the actual harm the Defendant's criminal conduct caused.

### I.   Relevant Factual and Procedural Background

Defendant was tried and convicted on five counts in a jury trial. (Docket No. 201). Counts One, Two, and Three of the Superseding Indictment charged Defendant with making false statements to the Department of Labor in three forms for workers' compensation (OWCP) in 2012 and 2013, in violation of 18 U.S.C. § 1001. (Docket No. 143 at 8-11). Specifically, Defendant was charged under section 1001 for "willfully and knowingly ma[king] and caus[ing] to be made a materially false, fictitious, and fraudulent statement(s) and representation(s) to the Department of Labor." Id. Count Four charged Defendant of embezzling money from the Social Security

**Criminal No. 13-633 (GAG)**

Administration (SSA) between on or about July 22, 2013, and continuing through on or about August 30, 2013, in violation of 18 U.S.C.. §§ 641-42. Id. at 11-12. And finally, Count Five charged Defendant with concealing or failing to disclose his work activities to the SSA, and benefitting from such concealment, in violation of 42 U.S.C. § 408(a)(4). Id. at 12.

At trial, the jury found Defendant guilty on all counts. According to the Government, "[t]he conviction resulted from a protracted trial where the United States presented overwhelming evidence to show that Rivera-Ortiz lied as to a material fact in his applications for OWCP and SSA disability benefits filed in 2005." (Docket No. 269 at 2). Defendant, on the other hand, accuses the Government of "attempt[ing] to mislead the Court by arguing that the offenses for which Mr. Rivera was convicted constitute continuing offenses dating back to 2005." (Docket No. 274 at 2). On June 8, 2018, the Court ordered the parties to submit briefs regarding restitution, posing three questions, including whether it should consider amounts since 2005 or 2012.

**II.     Discussion**

The Court asked the parties to submit briefs answering three questions. First, whether for the purposes of restitution, the fact that a fraud is committed at any point requires that the entire amount be restituted or a percentage. Second, whether the Court should adopt a comparative fault type of analysis to determine restitution. And third, whether the Court, as a matter of law, based on the conviction, be required to hold an evidentiary hearing and to what extent, and to what extent not, and any other relevant issues that the Court should address. (Docket No. 266).

After reviewing the parties' submissions, the Court holds that Defendant's restitution must be limited to the timeframe covered by the charged conduct (2012-13) because a scheme was not an element of the convicted offenses. It also holds that it cannot adopt a comparative fault analysis and is not required to hold an evidentiary hearing. However, it orders the Government to revise its

proposed restitution amount in accordance to the Court's holding, and subsequently authorizes Defendant to respond.

A. Calculation of Restitution

The main issue is whether Defendant, charged with making false statements, embezzling Social Security funds, and concealing his ability to work to the SSA in 2012 and 2013, must restitute the amounts earned from engaging in this fraudulent conduct since 2005. The Government argues that Defendant should pay restitution for OWCP and SSA disability benefits since 2005 because Defendant's "counts of conviction resulted from one continuous crime." (Docket No. 269 at 7). Defendant disagrees, and argues that the Court must only consider the 15-month period prior to the filing of each OWCP form (1032 form). (Docket No. 267 at 2). The Court holds that Defendant cannot be ordered to pay restitution for amounts beyond the indictment's allegations because he was not charged with a "scheme" to defraud the Government.

The Mandatory Victims Restitution Act (MVRA) "compels a sentencing court to order a defendant convicted of certain crimes, including crimes against property, to make restitution to his victim." United States v. Innarelli, 524 F.3d 286, 292–93 (1st Cir. 2008); 18 U.S.C. § 3663A(a), (c). A "victim" is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A (a)(2). The definition of victim includes "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." Id. The restitution amount is limited to the victim's actual loss, and "[a]ctual loss is widely (and correctly) thought to be limited to pecuniary harm that would not have occurred but for the defendant's criminal activity." United States v. Alphas, 785 F.3d 775, 786 (1st Cir. 2015).

The Court may consider conduct not alleged in the indictment if the convicted offense "involves as an element a scheme, conspiracy, or pattern of criminal activity." United States v. Matos, 611 F.3d 31, 43 (1st Cir. 2010); see also United States v. Hensley, 91 F.3d 274, 277 (1st Cir. 1996) (The Court may order restitution "*without regard to whether the particular criminal conduct* of the defendant which directly harmed the victim *was alleged in a count* to which the defendant pled guilty or was even charged in the indictment.") (emphasis added). "Under 18 U.S.C. § 3663(a)(2), *any conduct that is in the course of the scheme,* conspiracy, or pattern may be considered in calculating restitution." United States v. Acosta, 303 F.3d 78, 87 (1st Cir. 2002) (emphasis added). Generally, "courts require that the indictment must 'specifically' define the scheme in order to ensure that the restitutionary amount not exceed the harm directly caused the victim of the scheme embraced by the offense of conviction." Hensley, 91 F.3d at 277; see also United States v. Foley, 783 F.3d 7, 30 (1st Cir. 2015) ("In determining the extent of the underlying scheme, we begin with the terms of the indictment . . . . [which] alleged that Foley engaged in a scheme to defraud mortgage lenders . . . ."). Still, courts may impose restitution "simply on evidence sufficient to enable the sentencing court to demarcate the scheme," even if it is not alleged in the indictment. Hensley, 91 F.3d at 277. In those instances, the court "should consider the totality of the circumstances, including the nature of the scheme, the identity of its participants and victims, and any commonality in timing, goals, and modus operandi." Id.

Put succinctly, the Court must first determine if a "scheme" is an element of the offenses charged. If so, then it can consider conduct not alleged in the indictment that falls within the scheme Defendant was convicted for. When considering such conduct, the Court must look at the indictment and consider the totality of the circumstances. Here, the Government fails the first part of the test. Although it argues that the charged conduct "were acts taken to conceal the fraudulent

scheme commenced in 2005," a scheme is not an element of the convicted offenses. (Docket No. 269 at 2). Therefore, the restitution penalty must be limited to the conduct charged in the indictment.

*1. 18 U.S.C. § 1001*

Section 1001(a) punishes whoever knowingly and willfully:

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
(2) *makes any materially false, fictitious, or fraudulent statement or representation*; or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.
18 U.S.C. § 1001. (emphasis added)

Defendant was not convicted for a "scheme" under Section 1001(a)(1). According to the indictment, Defendant "willfully and knowingly made and caused to be made a materially false, fictitious, and fraudulent statement(s) and representation(s) to the Department of Labor." (Docket No. 143-1 at 6-9). As the indictment makes clear, Defendant was charged and convicted for making materially false statements under (a)(2) on three occasions. Because a "scheme" was not an element of the offense for which Defendant was convicted, the Court cannot impose restitution for acts beyond the indictment's allegations.

An analogous Fourth Circuit precedent compels the Court to limit restitution to the timeframe covered by the three counts, which is fifteen months before each alleged fraudulent statement. In United States v. Altvater, the defendant began receiving worker's compensation benefits in 2001, and continued to file 1032 forms in subsequent years. 592 Fed.Appx. 174, 175 (4th Cir. 2014). The 1032 form "requires the claimant to report any outside employment from the preceding fifteen months, the rate of pay received from that employment, and any ownership interest in a business enterprise maintained in the preceding fifteen months." Id. at 176. Between 2005-2008, the defendant reported that she had been involved in a family business enterprise, but

received no payment for her work. Id. at 175. In 2009 and 2010, she did not report any business involvement. In reality, however, "from April 2005 to December 2011, [the defendant] owned an interest in a spa and gym, and she worked there for several hours each week." Id. She was charged with making false statements only in her 2009 and 2010 forms. Id. At sentencing, the Government argued that the years prior to the charged conduct "constituted relevant conduct for the purpose of calculating loss." Id. at 176. The district court disagreed, "reasoning that the Government *had failed to charge a scheme . . . .*" Id. (emphasis added). It ordered that the loss "should be calculated beginning August 2008, or fifteen months prior to the execution of the false 1032 form, in November 2009, on which count one of the indictment was based." Id. The district court, however, also ordered the restitution amount to include benefits received after her second false statement. The Fourth Circuit vacated and remanded the restitution award for this reason, holding that the defendant "may not be held liable in restitution for payments received after December 2010, as the receipt of payments after that time *is not conduct that forms the offense of conviction*." Id. at 178.

The same reasoning applies here. Defendant was not charged with a scheme. He was indicted for lying in a 1032 form when asked if he had worked during the prior fifteen months. The "conduct that forms the offense of conviction" is the fraudulent statement made in each form—that he had not worked in the past fifteen months when in fact he did. Id. The Government can only recover for the actual loss caused by that harm. The three counts were on or about June 25, 2012; June 25, 2013; and August 8, 2013. Hence, the Government can only recover for the actual loss caused between March 25, 2012, and August 8, 2013, which covers the "fifteen months prior to the execution of the false 1032 form." Id. at 176.

The Government argues that Defendant should pay restitution for conduct preceding 2012 because section 1001 is a "continuing crime." But no First Circuit authority exists ordering

**Criminal No. 13-633 (GAG)**

restitution for unalleged conduct based on a crime's status as a continuing crime. Although the two concepts may overlap, a continuing offense "is not the same as a scheme or pattern of illegal conduct."[1] United States v. Dunne, 324 F.3d 1158, 1164 (10th Cir. 2003) (citing United States v. Jaynes, 75 F.3d 1493, 1506 (10th Cir. 1996)); see also United States v. Mubayyid, 567 F. Supp. 2d 223, 241 (D. Mass. 2008), aff'd in part, rev'd in part on other grounds, 658 F.3d 35 (1st Cir. 2011) ("[C]ourts have concluded that the mail fraud statute, 18 U.S.C. § 1341, the wire fraud statute, 18 U.S.C. § 1343, and the Major Fraud Act, 18 U.S.C. § 1031(a), all of which use the word 'scheme,' are not continuing offenses for statute of limitations purposes."). The MVRA orders restitution when a scheme is an element of the offense, and allows restitution for the whole scheme. It does not do the same for "continuing crimes." Therefore, the Government's argument equating "scheme" to "continuing offense" lacks merit.

*2. 18 U.S.C. § 641*

Sections 641-42, which punish embezzlement, also do not include a "scheme" as an element of the offense. Section 641, in relevant part, states:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof.
> 18 U.S.C. § 641.

Defendant was charged and convicted because he "knowingly and willfully embezzled, stole, and converted to his own use or the use of another, money of the Social Security Administration . . . to which he knew he was not entitled, having a value of approximately

---

[1] A "continuing offense" is one that either Congress by explicit language intended to be considered "continuing" or it is one which by its very nature is inherently "continuing." United States v. Powell, 99 F. Supp. 3d 262, 264 (D.R.I. 2015) (Toussie v. United States, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970)). As the Government concedes, the First Circuit has not decided whether section 641 is a continuing offense. (Docket No. 269 at 4).

**Criminal No. 13-633 (GAG)**

$6,209.70." (Docket No. 143-1 at 9-10). According to the indictment, the offense occurred on or about July 22, 2013, and continued through on or about August 30, 2013. As it did regarding section 1001, Government also argues here that Defendant should pay restitution for conduct preceding 2013 because embezzlement constitutes a "continuing crime." Yet as the Court discussed regarding section 1001, that argument fails. Since a scheme is not an element of the convicted offense, the Court must impose restitution only for the amount embezzled on or about July 22, 2013, and continuing through on or about August 30, 2013.

### 3. 42 U.S.C. § 408(a)(4)

A scheme is not an element of 42 U.S.C. §408(a)(4). Section 408(a)(4) punishes whoever:

> having knowledge of the occurrence of any event affecting (1) his initial or continued right to any payment under this subchapter, or (2) the initial or continued right to any payment of any other individual in whose behalf he has applied for or is receiving such payment, *conceals or fails to disclose such event with an intent fraudulently to secure payment either in a greater amount than is due or when no payment is authorized*."
> 42 U.S.C.A. § 408 (emphasis added).

According to the indictment, Defendant "having knowledge of the occurrence of an event affecting his continued right to OWCP payments, concealed and failed to disclose such event with the intent to deceive the Social Security Administration, and to fraudulently secure payments when no payments were authorized." (Docket No. 143-1 at 10). The charged conduct occurred between on or about July 22, 2013, and August 30, 2013. Id.

Like the other statutes at stake, a "scheme" is not an element of the offense in a section 408(a)(4) violation. The Government does not argue it is either. In fact, it does not even argue it is a continuing offense, as it did for sections 1001 and 641-42. All the Government has stated is that the charged conduct "were acts taken to conceal the fraudulent scheme commenced in 2005." (Docket No. 269 at 2). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on

**Criminal No. 13-633 (GAG)**

its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Because a "scheme" was not an element of the offense, Defendant must only restitute the amounts obtained in violation of section 408(a)(4) as a result of his concealment on or about July 22, 2013 and continuing through on or about August 30, 2013.

B. Comparative Fault

The parties offer no authority indicating that the Court must consider comparative fault in assessing restitution. Defendant argues that the Court should consider "evidence regarding the USPS, DOL-OWCP and SSA's knowledge of Mr. Rivera's work activities for the APWU during the relevant time periods or negligence in their administration of the agency and/or benefit programs." (Docket No. 267 at 7). He further argues that the Court "must also evaluate the victim's reasonable opportunity and failure to take action to prevent losses, as well as how its negligence contributed to such harm." Id. His reasoning stems from the fact that restitution must be "based upon losses directly resulting from [Defendant's] conduct." United States v. Quillen, 335 F.3d 219, 226 (3rd Cir. 2003). If the Government knew of Defendant's conduct and failed to react, Defendant argues, then the losses did not "directly result" from Defendant's conduct. But neither Quillen nor any authority cited by the parties has held so. As the First Circuit explained in the context of a different criminal statute, "[t]hese are criminal statutes, not tort concepts." United States v. Brien, 617 F.2d 299, 311 (1st Cir. 1989). Therefore, based on the parties' submissions, the Court holds that it cannot consider comparative fault when imposing restitution.

C. Mandatory Evidentiary Hearing

The Government bears the burden of demonstrating the amount of restitution by a preponderance of the evidence. 18 U.S.C. § 3664(e). The "amount of restitution ordered must be based on actual loss, not intended or expected loss . . . ." Innarelli, 524 F.3d at 295. "Actual loss

**Criminal No. 13-633 (GAG)**

is widely (and correctly) thought to be limited to pecuniary harm that would not have occurred but for the defendant's criminal activity." Alphas, 785 F.3d at 786. However, the Court's "calculation of restitution is not held to standards of scientific precision." United States v. Sanchez-Maldonado, 737 F.3d 826, 828 (1st Cir. 2013) (citing United States v. Salas-Fernandez, 620 F.3d 45, 48 (1st Cir. 2010)). The Court must respond "to some reliable evidence, [but] no more is exigible." Id. The standard for "some reliable evidence" is very low; a "'modicum of reliable evidence' will suffice." Salas-Fernandez, 620 F.3d at 48 (citing United States v. Vaknin, 112 F.3d 579, 587 (1st Cir. 1997)). Essentially, "the restitutionary amount must have a rational basis in the record." Id.

The parties provide no authority indicating that the Court must conduct an evidentiary hearing as a matter of law. Nevertheless, having defined the boundaries of the mandatory restitution, the Court orders the Government to brief it on the actual loss on or before October 1, 2018. It also orders Defendant to submit, on or before October 20, 2018, any evidence offsetting the amounts based on what he would have earned but for his illegal acts.

The instant ruling should not be interpreted as a bar for the United States to recover civilly, or in any other separate proceeding, those amounts embezzled by Defendant that are not covered by the Court's restitution judgment.

**SO ORDERED.**

In San Juan, Puerto Rico this 23rd day of August, 2018.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge