## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff

v.                                                  CASE NO. 13-633 (GAG)

RICARDO RIVERA ORTIZ,

Defendant.

## OPINION AND ORDER

Pending before this Court is Defendant Ricardo Rivera Ortiz's Motion to Strike the Government's Motion in Compliance at Docket No. 290 (Docket No. 293). The Government's motion at Docket No. 290 was filed in compliance to this Court's Opinion and Order ("Order") at Docket No. 287. This Court ordered the Government "to revise its restitution amount to reflect the actual harm the Defendant's criminal conduct caused". (Docket No. 287). The Court also ordered Defendant to submit, on or before October 20, 2018, any evidence offsetting the amounts based on what he would have earned but for his illegal acts. Id. The Court was very specific on the years the Government was entitled to seek a restitution penalty from Defendant. "The three counts were on or about June 25, 2012; June 25, 2013; and August 8, 2013. Hence, the Government can only recover for the actual loss caused between March 25, 201[1][1], and August 8, 2013, which covers the "fifteen months prior to the execution of the false 1032 form." Id at 6.

---

[1] Defendant was not charged with a scheme. See 18 U.S.C. § 1001, 18 U.S.C. § 641-42, and 42 U.S.C. § 408(a)(4). He was indicted for lying in a 1032 form when asked if he had worked during the prior fifteen months. The "conduct that forms the offense of conviction" is the fraudulent statement made in each form—that he had not worked in the past fifteen months when in fact he did. This Court misstated the dates and thus it reads "to be between March 25, 2012, and August 8, 2013". It was actually March 25, 2011 through August 8, 2013 since the first falsified form was filed on June 25, 2012. (Docket No. 3).

**Case No. 13-633 (GAG)**

## I.    Legal Analysis

In his Motion to Strike Defendant argues: (1) that the Government failed to comply with the Court's Order in a timely manner, (2) that the Government failed to comply with the Order regarding briefing its request for restitution of Social Security Administration ("SSA") benefits, and (3) that the Government failed to meet the Court's parameters established in its Order with regards to restitution to the Department of Labor's Office of Worker's Compensation Program ("OWCP"). (Docket No. 293). With respect to the first argument, the Court, in its discretion, noted the Motion in Compliance (Docket No. 290) even though it was filed one day after the deadline elapsed. As to the second argument, the Government's Supplemental Motion in Compliance and Response in opposition to Motion to Strike (Docket No. 294) correctly complies with the Court's Order in limiting the restitution regarding SSA from July 2013 to August 2013, which amounts to a total of $4,139.80.[2] Id. at 4. Now, in relation to restitution regarding the amounts disbursed by the OWCP, the Government has not complied with the guidelines imposed by this Court.

The Government incorrectly argues in support of an order of restitution for $500,281.07 to the OWCP, claiming that the evidence presented at trial proved that the Defendant lied in the 1032 forms filed after indictment and that Defendant was never eligible to receive OWCP benefits, and thus, the restitution should be based on all the benefits incorrectly awarded to Defendant. Id. The Court specifically established that the restitution to the OWCP was limited to the period between March 25, 2011 and August 8, 2013.  Thus, the Court turns to the issue regarding whether the Government complied with the legal burden imposed of proving the actual loss to the OWCP between March 25, 2011 and August 8, 2013.

---

[2] The Government requested a total of $261,195.90 regarding benefits from 2005 to 2013, which was not taken in consideration by the Court since it was already established in the Order (Docket No. 287) that the amounts for restitution from SSA would be limited from July 2013 to August 2013.

**Case No. 13-633 (GAG)**

1    The analogous Fourth Circuit precedent cited by this Court in its Order (Docket No. 287)

2    delves into what is considered a "loss" in these types of cases. See United States v. Altvaver, 592

3    Fed.Appx. 174 (4th Cir. 2014). "In a case involving diversion of government program benefits, loss

4    is the value of the benefits diverted from intended recipients or uses." United States v. Dawkins, 202

5    F.3d 711, 714 (4th Cir. 2000) (quoting U.S.S.G. § 2F1.1 cmt. n. 8(d)). "[W]hen determining losses

6    for sentencing purposes, *a court must subtract the amount of money or benefits to which a defendant*

7    *is legitimately entitled from the amount fraudulently claimed*." United States v. Miller, 316 F.3d 495,

8    499 (4th Cir. 2003) (emphasis ours); see also Dawkins, 202 F.3d at 715. "In calculating the total loss

9    attribution, a district court 'need only make a reasonable estimate of the loss.'" United States v.

10   Jones, 716 F.3d 851, 860 (4th Cir. 2013) (quoting U.S.S.G. § 2B1.1 cmt. n. 3(C)). The Government

11   bears the burden of proving the loss amount. Dawkins, 202 F.3d at 714.

12   The Government's argument regarding restitution to OWCP is, in simple terms, confusing.

13   The Government states that an OWCP claimant is entitled to receive benefits as long as said claimant

14   is disabled and cannot work. (Docket No. 279).  However, the OWCP employee presented at trial

15   by the Government testified that claimants are always required to work to the capacity allowed by

16   their disability.  Id. The problem with Defendant's application for OWCP benefits is that he claimed

17   that he could not perform any type of work, when in reality he was working as a union steward and

18   as a minister in his church. Id. The Government claims that the medical reports and other supporting

19   documents submitted by the Defendant failed to mention or disclose his capacity to work, therefore,

20   the totality of his OWCP benefits claim was fraudulent. Id. Thus, the Government claims "his

21   concealment of his ongoing capacity to work as a union steward from the OWCP, the SSA and his

22   physicians, made him completely ineligible for OWCP wage loss benefits". (Docket No. 279).

23   "Therefore, if [Defendant] Rivera-Ortiz had been truthful and disclosed to OWCP that he was

24

3

Case No. 13-633 (GAG)

capable of working but was refusing to seek suitable work, he would have been deemed ineligible to receive OWCP benefits by operation of law." Id. The Government's final argument is inconsistent. Following the Government's logic, if Defendant had been truthful and disclosed the work he was doing to the OWCP, that meant he would receive a reduction in the benefits disbursed to him. Since beneficiaries of the OWCP are required to work to the capacity allowed by their disability, Defendant would have still been eligible to receive certain OWCP benefits. The Government claims that Defendant was capable of working but was refusing to seek suitable work. Id. The Government's argument is incomplete as it fails to explain how Defendant's work was not suitable for his condition. Nonetheless, the Government seeks to convince this Court that "the fact remains that Rivera-Ortiz has not presented any evidence at trial, or during sentencing, that could be used to calculate what his potential OWCP benefits for partial disability would have been if he had been truthful." Id.

The Government argues in its Supplemental Motion in Compliance (Docket No. 294) that "where the government shows the fraud to be so extensive and pervasive that separating legitimate benefits from fraudulent ones is not reasonably practicable, the burden shifts to the defendant to identify which benefits were legitimate." (Citing USSG Primer on Loss Calculations Under §2B1.1(b)(1), p. 22) (quoting United States v. Hebron, 684 F.3d 554, 563 (5th Cir. 2012)). "Absent such a showing by the defendant, the district court may reasonably treat the entire claim as intended loss." Id. The extent of the argument put forth by the Government is that the fraud was so "extensive and pervasive" that calculating which benefits were legitimate is impracticable.

The analogous precedent in Altvaver paved the way to display how the Government should have proven the actual loss it suffered due to defendant's fraudulent representations. In Altvaver, (592 Fed.Appx. at 176):

4

Case No. 13-633 (GAG)

"The government's loss calculation was based on a memorandum prepared by Winn. (Winn was a district director for the OWCP). Winn calculated the loss by first estimating Altvater's *imputed* earnings from the spa between April 2005 and December 2011. Next, she determined the amount of benefits to which Altvater would have been entitled had she reported that income. Finally, Winn subtracted the amount of benefits to which Altvater was actually entitled between April 2005 and December 2011 from the total amount of benefits she received during that period".

Furthermore, "Winn obtained the rate of pay for a first-line supervisor or manager of personal service workers—the job with most similar duties to those performed by Altvater—and then adjusted that amount for various economic factors throughout the relevant time period". Altvaver, 592 Fed.Appx. at 176

The Government has not met its burden of showing why calculating the pay received by Defendant for his two jobs, and then subsequently calculating the fraudulent benefits he received is impracticable. It is imperative that the Court take this into consideration since the restitution amount is essential to calculate the sentence that will be imposed. Thus, the Court finds that the Government did not demonstrate that the burden imposed by law to prove actual loss was shifted to Defendant.

Nonetheless, the amounts not taken into consideration by this Court for sentencing purposes will still be available for the Government to recover in a civil proceeding.

"When a person fraudulently obtains government benefits, the United States typically is entitled to recover all sums paid (in a civil forfeiture proceeding) even though some benefits would have been paid anyway (that is, absent the fraud). See, e.g., 5 U.S.C. § 8148(a); 28 U.S.C. § 2514. But when the same fraudulent conduct undergirds a criminal conviction, courts have steadfastly refused to equate the amount of loss under the sentencing guidelines with the amount recoverable by the government through civil forfeiture. That is because "[f]orfeiture is a penalty imposed on a criminal independent of any loss to the crime victim." U.S. v. Parsons, 109 F.3d 1002, 1005. Consequently, "[t]he loss itself (whether the actual or intended loss) is limited to the tangible economic loss of the victim." Id. at 1004. The forfeitable amount does not count toward the government's loss, which is measured by the amount of benefits that was (and, in the case of intended loss, would have been) paid as a result of the fraud.[3]"

---

[3] See United States v. Harms, 442 F.3d 367, 380 (5th Cir.2006); United States v. Dawkins, 202 F.3d 711, 715 (4th Cir.2000).

5

**Case No. 13-633 (GAG)**

United States v. Alphas, 785 F.3d 775, 786 (1st Cir. 2015). The Court finds that the Government met the parameters imposed regarding the restitution amount pertaining to the SSA ($4,139.80 for the period of July 2013 through August 2013). However, the Government failed to meet the burden imposed regarding restitution to the OWCP. (Docket No. 287). The Court stated that the Government can only recover for the actual loss caused between March 25, 201[1], and August 8, 2013, which covers the "fifteen months prior to the execution of the false 1032 form." Id. It also ordered the Government to brief the issue of actual loss it suffered in the present case. The Government states that in these cases, the Court may use the face value of the disbursement made by the agencies as a starting point in computing loss. (Docket No. 294). Thus, restitution to OWCP would be a total of $148,588.90. This Court disagrees.

The Government bears the burden of demonstrating the amount of restitution by a preponderance of the evidence. 18 U.S.C. § 3664(e). The "amount of restitution ordered must be based on actual loss, not intended or expected loss …" United States v. Innarelli, 524 F.3d 286, 295 (1st Cir. 2008). "Actual loss is widely (and correctly) thought to be limited to pecuniary harm that would not have occurred but for the defendant's criminal activity." Alphas, 785 F.3d at 786. However, the Court's "calculation of restitution is not held to standards of scientific precision." United States v. Sanchez-Maldonado, 737 F.3d 826, 828 (1st Cir. 2013) (citing United States v. Salas-Fernandez, 620 F.3d 45, 48 (1st Cir. 2010)). The Court must respond "to some reliable evidence, [but] no more is exigible." Id. The standard for "reliable evidence" is very low; a "'modicum of reliable evidence' will suffice." Salas-Fernandez, 620 F.3d at 48 (citing United States v. Vaknin, 112 F.3d 579, 587 (1st Cir. 1997)). Essentially, "the restitutionary amount must have a rational basis in the record." Id.

**Case No. 13-633 (GAG)**

In conclusion, the Government does not meet its burden of showing that the fraud was so extensive and pervasive that separating legitimate benefits from fraudulent ones was not reasonably practicable. (Docket Nos. 290; 294). The Court finds that the burden of proving actual loss did not shift from the Government to the Defendant. The Government could have met the burden by including in its submissions detailed information from an OWCP employee detailing what benefits were incorrectly distributed to Defendant. The Government did not provide the information necessary to award a restitution amount with regards to the OWCP with a rational basis in the record. As such, the Court will not take into consideration the restitution amount, with regards to OWCP, at sentencing. The Court thus, **DENIES IN PART** and **GRANTS IN PART** Defendant's Motion to Strike (Docket No. 293). The instant ruling should not be interpreted as a bar for the United States to recover civilly, or in any other separate proceeding, those amounts embezzled by Defendant that are not covered by the Court's restitution judgment.

The United States Probation Officer shall amend the presentence report in conformity with this order, including appropriate guideline calculations.

**SO ORDERED.**

In San Juan, Puerto Rico this 1st of November, 2018.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge
